IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Woodlawn Community Development Corp., <br>     Plaintiff-Appellant, <br><br> v. <br><br> Official Committee of Unsecured Creditors of Woodlawn Community Development Corp. and Gina Krol, Chapter 11 Trustee, <br>     Defendants-Appellees. | No. 19 C 7789 <br><br> Judge Ronald A. Guzmán |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Woodlawn Community Development Corporation's appeal [1] is denied and the Bankruptcy Court's ruling is affirmed. Civil case terminated.

## STATEMENT

In October 2018, longstanding Chief Executive Officer and President of the non-profit entity Woodlawn Community Development Corporation ("WCDC"), Dr. Leon Finney, announced at a Board of Directors' meeting that WCDC would need to declare bankruptcy due to federal tax liens imposed on it by the Internal Revenue Service of approximately $1.8 million. At the same meeting, Finney advised his fellow directors that he was battling a serious illness, which would require a leave of absence.[1] On October 24, 2018, WCDC filed for voluntary bankruptcy protection under Chapter 11 of the Bankruptcy Code ("Code"). WCDC initially retained Clarence Nixon, a longtime Board member, as a turn-around consultant during Finney's absence. Because the IRS had levied upon its bank accounts, WCDC filed on November 5, 2018 an emergency motion to use cash collateral, in part, to pay Nixon a consulting fee. (*In re Woodlawn Comty. Dev. Corp.*, No. 18-29862 (Bankr. N.D. Ill.), WCDC's Mot. Entry Interim & Final Orders Authorizing Debtor Use Cash Collateral, Dkt. # 36.) On November 8, 2018, the Bankruptcy Court granted WCDC's motion to use cash collateral, but after objections from the Trustee and the Official Committee of Unsecured Creditors ("the Committee"), expressly ruled that the "consulting fee" to Dr. Nixon was not to be paid "until further order of the Court." (*Id.*, Interim Order Authorizing Use Cash Collateral, Dkt. # 47.)

WCDC thereafter rescinded the consulting agreement with Nixon and entered into an employment agreement with him dated November 16, 2018, providing that he be paid an initial

---

[1] Finney later resigned.

bonus of $35,000.00 followed by $16,667.00 per month, starting January 1, 2019. (*Id*., WCDC's 1st & Final App. Payment Nixon, Dkt. # 274, Ex. A, ¶ 4.)

Despite the Bankruptcy's Court's ruling that no consulting fee was to be paid to Nixon until further court order, WCDC paid Nixon $35,000.00 on or about November 21, 2018. The payment was first disclosed to the Committee on January 3, 2019. The Committee objected to the payment, asserting that it violated the November 8, 2018 order entered by the Bankruptcy Court, and demanded that the money be returned to WCDC's debtor-in-possession bank account. Although not agreeing with the Committee that the payment was in violation of the order, WCDC asked Nixon to return the funds, which he did on or around February 1, 2019.

On February 5, 2019, the Committee filed a motion to appoint a Trustee to oversee the bankruptcy estate. Just over a week later, on February 13, 2019, WCDC filed a motion to retain Nixon as a professional pursuant to § 327 of the Code. The motion stated in relevant part:

> Due to the extended illness and absence of Dr. Leon Finney, Jr., the Board of Directors of the Debtor initially approved the engagement of Dr. Clarence Nixon Jr., as a turnaround consultant to assist with respect to Debtor's efforts to financially as well as organizationally re-structure the Debtor's business operations. Dr. Nixon, under the terms of the consulting agreement[,] was to have received an initial retainer fee of $30,000. However, this initial consulting fee was never paid to Dr. Nixon because the first interim cash collateral order entered by this Court on November 8, 2018 (Dkt. # 47), specifically excluded the payment of a <u>consulting fee</u> to Dr. Nixon.

(*Id*., WCDC's App. Auth. Retain Nixon, Dkt. # 119, ¶ 6) (emphasis in original).[2] The motion went on to state as follows:

> Subsequently, on November 16, 2018, the Board of Directors of the Debtor met and adopted a resolution which rescinded the "Consulting Agreement" with Dr. Nixon and instead approved an employment agreement with Dr. Nixon to serve as Interim Chief Executive Officer and President ("Interim CEO") until confirmation of a Plan of Reorganization or the return of the current Chief Executive Officer. The employment of Dr. Nixon was to be effective as of the Petition date . . . .

(*Id.*, ¶ 7.) The Bankruptcy Court continued WCDC's motion to appoint Nixon as a professional three times while it considered and ultimately granted the Committee's motion to appoint a

---

[2] It appears that the $30,000.00 mentioned in the motion may be an incorrect reference to the $35,000.00 fee that WCDC had apparently agreed to pay Nixon. Moreover, while WCDC's motion claims that no consulting fee was paid to Nixon, the Bankruptcy Court, in ruling on WCDC's Final Application for Fees and Expenses of Nixon that is the subject of the instant appeal, stated that WCDC "blatantly violated the cash collateral order" when it made the $35,000.00 November 21, 2018 payment to Nixon.

Trustee. The Bankruptcy Court subsequently denied WCDC's application to designate Nixon as a professional. While that order is not available on the electronic docket, the parties agree that in denying WCDC's application to appoint Nixon as a professional, the Bankruptcy Court found that the Trustee was free to employ whatever personnel she desired and never determined whether Nixon was a professional under § 327.

On November 14, 2019, WCDC filed the First and Final Application for Fees and Expenses of Nixon, requesting payment of approximately $72,000.00 in salary and $391.00 in expenses for the four months he worked between the bankruptcy filing and the appointment of the Trustee. (*Id.*, WCDC's 1st & Final App. Payment Nixon, Dkt. # 274, at 13.) The Bankruptcy Court denied the application in open court, stating in part as follows:

> Whether [Nixon] is considered a professional under Section 327 or an employee hired to serve as interim president and CEO, he cannot be compensated from the bankruptcy estate because court approval is required in both instances. If he was a consultant, his employment as a professional had to be approved under Section 327. If he was hired by the board to serve as interim CEO, that hiring was undoubtedly outside the ordinary course of the debtor's business and it had to be approved by the court under Section 363(a) of the Bankruptcy Code. So either way the motion must be denied.

(11/14/19 Tr., Dkt. # 9.) This appeal followed.[3]

A district court has appellate jurisdiction over appeals from a bankruptcy court's "final judgments, orders, and decrees." 28 U.S.C. § 158(a)(1). To determine whether an order in bankruptcy court is final, the Court analyzes whether the order "resolves one of the individual controversies that might exist as a standalone suit outside of the bankruptcy." *Germeraad v. Powers*, 826 F.3d 962, 965 (7th Cir. 2016). Because the Bankruptcy Court's order resolved the issue of Nixon's fee application, this Court has jurisdiction over the instant appeal. The Court reviews the Bankruptcy Court's factual findings for clear error and its legal conclusions de novo. *In re Marcus-Rehtmeyer*, 784 F.3d 430, 436 (7th Cir. 2015).

WCDC first argues that the Bankruptcy Court erred in stating that WCDC's employment of Nixon required that he be found to be a professional under § 327 of the Code. A professional under § 327 must be so designated by the Bankruptcy Court and his fees must be approved by the Bankruptcy Court. *In re Madison Mgmt. Grp., Inc.*, 137 B.R. 275, 283 (Bankr. N.D. Ill. 1992). According to WCDC, Nixon was an employee who was acting as its CEO and President in Finney's absence, and it filed the motion to appoint Nixon as a professional under § 327 only "in an abundance of caution," after the Committee objected to the $35,000.00 initial bonus payment to Nixon. As previously noted, the Bankruptcy Court denied the motion without addressing the merits. In denying WCDC's application for Nixon's fees, the Bankruptcy Court again did not

---
[3] The Trustee has adopted in full the Committee's brief on appeal, so all relevant references and rulings apply to her in addition to the Committee.

decide the legal issue of whether Nixon met the statutory requirements of a professional. Rather, it ruled that one way it could approve fees being paid from a bankruptcy estate was if those fees were paid to a professional under § 327, but because Nixon had not been so designated, he could not be paid pursuant to § 327.[4] WCDC's argument does not rebut this finding, so this ground for relief fails.

WCDC also contends that the Bankruptcy Court erred in concluding alternatively that denial was appropriate because even if Nixon was not a professional but rather an employee, then his employment contract had to have been approved under § 363 as outside the ordinary course of business, and no such approval had been sought by or granted to WCDC.[5] WCDC's only response is that a "per se rule that anytime a Chapter 11 Debtor employs [a] new executive officer or employee to operate an entity, the employment is outside the ordinary course of business is seriously flawed," and that the Board's decision to hire Nixon was a "business decision consistent with customary business practices." (Appellant's Br., Dkt. # 10, at 8, 11.) Notably, WCDC cites no authority in support of this contention, so WCDC's appeal on this ground is denied on that basis alone. Moreover, as the Bankruptcy Court noted, WCDC never responded to the Committee's argument in opposing Nixon's fees that even if WCDC had hired Nixon as an interim CEO and President, such retention was outside the ordinary course of business; thus, the Bankruptcy Court found that WCDC had "conceded the point." *See Webb v. Frawley*, 906 F.3d 569, 581 (7th Cir. 2018) ("[The plaintiff] has waived any counterarguments he may have had by not responding to [the defendant's] argument on this topic in his reply brief."). Having waived the argument below, WCDC cannot rely on it on appeal.

---

[4] In any event, as the Bankruptcy Court noted (and as WCDC now insists), Nixon would not meet the requirements of a professional. Under § 327, "the trustee [or a debtor in possession exercising the powers of a trustee], with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a). As a member of WCDC's Board of Directors, Nixon was not disinterested. *See* 11 U.S.C. § 101(14)(B) ("The term 'disinterested person' means a person that . . . is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor . . . .").

[5] As noted by another court:

> The concept of employment under § 363(b) is straightforward. If the business of a debtor is being operated, the trustee or debtor in possession may use property of the estate in the ordinary course without notice or hearing. 11 U.S.C. § 363(c). When a proposed use of property is in furtherance of operating a debtor's business but is out of the ordinary course, authority must be obtained under § 363(b). The use will be allowed after notice and hearing if a valid business justification exists.

*In re Copenhaver, Inc.*, 506 B.R. 757, 762 (Bankr. C.D. Ill. 2014) (internal citations omitted).

4

Finally, the basis on which WCDC seeks to premise Nixon's fees, as an administrative expense under § 503(b)(1)(A)(i) of the Code,[6] also fails. *See In re Romano*, 564 B.R. 613, 626 (N.D. Ind. 2016) ("'By making express provision for employment under § 327, payment under § 330, and priority under § 503(b)(2), the Code logically forecloses the possibility of treating § 503(b)(1)(A) as authority to pay (and give priority to) claims that do not meet its substantive requirements.'") (citation omitted).

For these reasons, WCDC's appeal is denied and the Bankruptcy Court's ruling is affirmed.

March 27, 2020

**Ronald A. Guzmán**
**United States District Judge**

---

[6] Section 503(b)(1)(A)(i) reads as follows:

> (b) After notice and hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
> (1)(A) the actual, necessary costs and expenses of preserving the estate including—
> (i) wages, salaries, and commissions for services rendered after the commencement of the case.

11 U.S.C. § 503(b)(1)(A)(i).